## Case No. 6,468.

### HIGGINS v. JENKS et al.

[3 Ware, 17; [2] 31 Hunt, Mer. Mag. 74.]

Circuit Court, D. Maine. Dec. 2, 1853.

SPECIFIC PERFORMANCE—INJUNCTION—RIGHTS OF CO-OWNERS OF VESSELS.

1. Bill in equity for the specific performance of a contract for the sale of three-eighths of a ship now being built, with the right of the purchaser to the command, and for an injunction on the owners of the five-eighths against selling the same except with notice of this contract, and subject to whatever right the plaintiff may have under it, and against appointing any other person as master.

2. If the contract gives him any right in the nature of a privilege and preference to the command of the ship—an obligation, charge, lien, or nexus which follows and adheres to the thing, and qualifies the right of ownership, he is entitled to protection by injunction against the transfer of the five-eighths of the vessel without notice of his contract and of whatever rights he has under it.

3. But whether a preliminary injunction should issue against the appointment of any

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Reported by George F. Emery, Esq.]

other person to the command is a question not free from doubt. The grounds on which courts of equity take jurisdiction to decree a specific performance of contracts stated. The rights of co-owners as to possession discussed.

In equity.

Fessenden & Deblois, of Portland, and Mr. Merrill, of Bath, for plaintiff.

Willis & Fessenden and Mr. Shepley, for defendants.

WARE, District Judge. This is a bill in equity seeking a specific execution of a contract. On the 9th of August, the defendants being then engaged in building a ship of about 1100 tons burthen, the plaintiff entered into a written contract for the purchase of three-eighths of her, upon which he was to pay at the rate of fifty-five dollars a ton, two-thirds of the amount in cash, deducting therefrom the cost of the rigging, which he was to furnish, and the other third in his notes, indorsed by Brookman & Co., of New York, in four, nine, and twelve months; and it was further agreed that Higgins should superintend and direct the completion and the rigging of the ship, for which he was to receive no other compensation than payment of his board; and that when completed he should sail her as master and have for his compensation the best wages with primage, etc., allowed to masters commanding similar ships from the port of Bath. In conformity with the agreement, the plaintiff has superintended and directed the work on the ship from the time of the contract until about the time of filing the bill; has furnished the rigging as it has been wanted, and made all his cash payments as often as demanded, and is now ready on the completion of the ship to deliver the securities named in the agreement for the balance due. The plaintiff apprehending that the defendants intended to disable themselves from performing their part of the contract by a sale and transfer of the vessel, filed this bill praying for an injunction against a sale of the three-eighths bargained to him, and on their disavowing any such intention, amended his bill praying an injunction against the sale of the other five-eighths, except with notice of his contract and subject to whatever rights he has under it, with a further prayer for an injunction against appointing any other person as master, and for a specific execution of the contract. Since the filing of the bill, the defendants have transferred five-eighths of the ship to Messrs. John and George Patten, and by a further amendment they have been made parties defendant, and the same remedies by injunction and specific performance are asked against them. The original defendants have appeared and put in affidavits admitting the contract, and offering to convey the three-eighths, and giving as a reason for refusing to fulfil the contract by putting the plaintiff in as master, that they have, since the contract was made, heard many reports and stories in disparagement of the

plaintiff's character as a ship-master, and against his truthfulness and integrity in his dealings as a man, from which they have become satisfied that he is not a fit person to have the command and management of such a ship, and that they should not consider their property in her to be safe in his hands. Mr. George Patten, one of the new defendants, has put in an affidavit admitting the purchase of five-eighths of the ship of Jenks & Harding, and stating that a parol agreement for the purchase was made on the fifth of the month, the day on which the bill was filed, but that the contract was not completed, and the transfer made by a bill of sale, until the eighth, three days after,—admitting that he knew that Higgins was the purchaser of three-eighths, and that he expected to go as master, but that he did not know the precise terms of the contract. As to the Messrs. Pattens, the purchasers, their purchase was made under such circumstances that they must be deemed and considered as having purchased with full notice of the contract with Higgins. They knew of his contract, and they knew of his expectation of going as master. The contract was in the hands of their venders, and they might have seen it by asking for it, as it was their duty to do. I consider them as standing on the same ground, and having the same rights as their venders, and no others. They took the five-eighths subject to all the right which Higgins had against Jenks & Harding.

The defense made by the affidavits of Jenks & Harding against a preliminary injunction till the hearing, and the same will be relied on at the final hearing against a decree for a specific execution, is in substance that of a surprise; that at the time of the contract they supposed Higgins to be a well qualified master, and a trustworthy man; that they are now undeceived, and from what they have since learned of his qualification as a ship-master, and of his character as a man, they verily believe that they cannot, with safety and prudence, confide to him the command of the ship, or entrust to him the management of their property. But it is not pretended that they were deceived by any artifice or management on the part of the plaintiff. The negotiation between the parties for the sale and purchase of this vessel, commenced sometime before the contract was consummated; the precise time does not appear, but I infer from the affidavits and the exhibits in the case in the early part—at least as early as the middle of July. It was completed on the 9th of August. Capt. Higgins is a native of this state, and was born and brought up in Orland, an adjoining town of Bucksport. Early in life he had been in the command of two small vessels in this state, engaged, I infer, in the coasting trade. Afterwards he went to New York, and was there employed as a ship-master. If he was a stranger to the defendants, it would seem that during the month in which the negotiations were pending, the defendant might, without difficulty, have made all the necessary inquiries, and obtained all the necessary information in relation to his qualifications and character, and it is hardly to be supposed that, as men of ordinary caution and prudence, they would have agreed to intrust to his management and control, so large and valuable a property as five-eighths of this ship, of the value of $37,000, according to the rate at which the sale was made to plaintiff, or that they would have been willing to have entered into that confidential relation of joint owner of the vessel, intrusting to him the command, unless they had been pretty well assured of his qualification as a seaman, and of his integrity as a man. With all this time and opportunity for informing themselves, it seems to me that their excuse of surprise for not fulfilling their engagement ought to be scrutinized pretty narrowly. It was nearly three months after the plaintiff had been engaged in executing his part of the contract, and about four from the commencement of the negotiation for the purchase, that he was informed that he would not have the command of the vessel, though I cannot but believe that it must have been well understood by the defendants that this was Capt. Higgins' principal object in the purchase; that it was not so much his object to make an investment in the vessel, as to provide himself with an honorable and lucrative employment.

If, however, it is made satisfactorily to appear that here has been a real surprise; if it be shown that for want of capacity and want of integrity, the plaintiff is unfit to be intrusted with the command of such a ship, and that the defendants cannot safely intrust their property in his hands, as this application for an injunction and specific performance is addressed to the discretion of the court, and is not a claim strictly ex debito justiciae, my opinion would be that he ought to be left to his remedy at law. Under this view of the subject it becomes necessary to examine the foundation of the defendants' excuse for not performing their engagement. They have produced a large number of affidavits in their justification, most of them from persons residing in Bath, Bucksport, Eastport, and Calais, in which places he seems formerly to have been best known, all speaking of him in terms strongly unfavorable; some who have had dealings with him charging him with dishonesty, others speaking only of his general reputation for want of integrity, and for want of veracity, and several of them adding that he commonly was known by the name of the lying Higgins. They uniformly speak of him as a man unfit to be intrusted with such a vessel. All this testimony is open to one general observation, that it relates to a period ten or twelve years ago, when he was employed in the command of small vessels in the coasting trade of this state, and while he was young, and soon after arriving at his majority. Some years ago, precisely when does not appear, but as I

collect it from the affidavits eight or nine years, the plaintiff left this part of the country and went to New York, and has since been employed as a ship-master from that port. The defendants have produced two affidavits from New York, one of Richard P. Buck, formerly of Bucksport, and now a commission merchant and ship-owner of New York, who states that he has been acquainted with Capt. Higgins for six years, that he has been consigned to him but never employed by him, that he thinks him unfit to have the command of a ship of 1000 tons, that he would not intrust him with the command of a ship, because he believed him to be incompetent, that he considers him untrustworthy and irresponsible, that he would not trust him for a hundred dollars, and he adds that he should not have given his affidavit if he had not been called upon by a subpoena. The other is of Benj. Carver, formerly a ship-master, and now a dealer in ship chandlery. He has known Higgins for three or four years, has but little acquaintance with him, but has formed an unfavorable opinion of his character, and would be unwilling to purchase into a ship of which he was part owner. This is all the evidence which the defendants have produced from New York, where the plaintiff has been employed for the last eight or nine years. That of Carver is a little, and but a little more than negative. That of Buck is explicit and full as to his opinion, and it may be remarked that he is the only one of the affiants, who has taken pains to inform us that he gives his affidavit from necessity, and in the same breath says that he would not trust the plaintiff for one hundred dollars. This appears to me to be pretty strong language for an unwilling witness towards a neighbor, who has shown himself able to fulfil a contract for more than $20,000. The defendants have also produced the affidavits of Mr. Curtis and of Mr. Dimmock, each president of an insurance company in Boston, who had insured vessels commanded by the plaintiff and had had losses. They both say that after examining the statements of the losses and the circumstances under which they happened, they were so dissatisfied that they should be unwilling to insure a vessel of which he had the command. If this evidence stood alone, and unexplained, and unqualified, it would appear to me to be entitled to very grave consideration. If the plaintiff has justly earned such a reputation that where his character is known, a vessel under his command could not be insured at all, or not at the usual rate, it would be a decisive objection to the application that he here makes, and I should feel bound to leave him to his remedy at law. But in this connection it is proper to consider the affidavit of Zebulon Cook, formerly of Boston and now of New York, an insurance broker of great experience, and entitled to full credit as a man of integrity and as an expert in the business. He was employed by the owners of one of the vessels insured in Boston, to prepare a statement of the loss, and he says that in making up the statement, his intercourse with Capt. Higgins was protracted for some weeks, and that in the information and explanation he gave, he showed so much frankness and fairness that he became favorably impressed towards him; and that he has heard nothing since to change that opinion. This was one of the cases from which the Boston insurers formed their unfavorable opinion, and perhaps it would not be unreasonable to allow one opinion to balance the other. To meet this testimony impeaching his character, the plaintiff has produced the affidavits of five gentlemen of New York and six from Boston belonging to reputable mercantile houses, who have been acquainted with him for the last seven or eight years, who have had transactions of business with him, all speaking in strong terms of his capacity and integrity, opinions which they have formed from their intercourse with him in business as well as from his general reputation. One of them, Mr. Deshon, of Boston, was acquainted with the affair of the Kanahwa, one of the insurance cases complained of by the Boston offices, and formed so favorable an opinion from his own observation and what he heard from others, that he was very desirous of selling him part of a ship as late as last August, and putting him into her as master.

On a fair consideration of the plaintiff's affidavits, I think that they more than balance and neutralize those of the defendants. These relate almost exclusively to a period ten or twelve years ago. The plaintiff was then a young man just past his majority. They undoubtedly leave on the mind an unfavorable impression of the plaintiff's character at that time. But whatever the truth may be, this has not prevented him from obtaining employment, and rising in his profession, and passing from the command of small coasting vessels to those of a larger class engaged in foreign trade; and for the last nine or ten years, while he has sailed from New York, notwithstanding the opinion of Mr. Buck, I feel bound to consider him as having maintained a fair reputation as a ship master, and as qualified and competent for any kind of business, he may be required to transact in that employment, and I must hold that the excuse which the defendants have offered for not performing their engagements be removed.

The question then fairly arises, and to my mind free and disembarrassed, whether the plaintiff, on the principles upon which courts of equity exercise this discretionary jurisdiction, is entitled to the relief, by way of injunction, for which he asks. As to the first prayer of the bill, that is an injunction against the transfer of the five-eighths of the vessel without notice of his contract, and whatever rights he has under it, I can see no objection to it. If the contract gives him

any right in the nature of a privilege and preference to the command of the ship, an obligation, charge, lien, or nexus which follows and adheres to the thing and qualifies the right of ownership, it is what he has bargained and paid for, and whatever it may amount to he is on every principle of justice entitled to. If it is a right of any value, he might lose it by a transfer to a bona fide purchaser without notice. But, if with notice, he would have the same right, whether it is to a specific performance or only to a compensation in damages against the assignees, or against the original owners. As to the second prayer for an injunction against the appointment of any other person to the command, there is certainly much more difficulty; nor do I pretend, after the best consideration I have been able to give to the subject, to hold an opinion free from doubt. It appears to me that this injunction ought not to be granted, unless on the ground that the contract is a proper one for a decree of specific performance, and this is only to be determined at the final hearing. I am aware that it is not unusual in cases admitting of doubt for the court to grant a preliminary injunction, to preserve all matters unchanged till the hearing, but it is usually in cases where things may remain in statu quo without sacrifice to either party. In this case the effect may be to keep the vessel unemployed at the wharf till the hearing, to the injury of all interests.

Without undertaking to anticipate what may be the opinion of the court on a final hearing, it may not be out of place here to remark that the grounds on which courts of equity take jurisdiction to decree a specific performance of contracts, are, that a court of law can give for the breach of a contract no other remedy than damages; that in the particular case damages are an imperfect and inadequate remedy; that it is against conscience to leave to a party his election, either to pay damages for a voluntary breach of his engagements, or faithfully to perform them, and that it is unequal and unjust to the complainant to leave him to recover, by a suit at law, such damages as a jury may think proper to give him, in a case where the damages are uncertain and conjectural, instead of having the full benefit for which he has bargained by a specific execution of his contract. 2 Story, Eq. §§ 717, 719. It cannot be denied that this reasoning of courts of equity applies in its full force to the present case. It is sufficiently apparent in this case that the principal object of the plaintiff in this purchase was not a mere investment of money. It was to provide for himself a safe, lucrative, and honorable employment in his profession. If he had purchased only as an investment, there would be no particular hardship in leaving him to an action of law for damages. A jury would have a clear and intelligible rule by which to ascertain the damage. But by what rule is a jury to calculate the damage to the plaintiff of the disappointment in being thrown out of employment, with all his available means locked up in this vessel. It is plain that the damage is altogether uncertain and conjectural.

The counsel for the defendants have urged several objections to the granting an injunction, in a line of argument tending to show that this is not a case for specific performance. By what process, it is asked, will the court enforce a specific performance, and if it is enforced of what avail will it be for the plaintiff? The force of this argument presses on the prayer for an injunction against appointing any other person as master. It is said, if the plaintiff is placed in the command, that the defendants, being the major owners, may immediately displace him and appoint a new master, and that a decree for a specific performance would be nugatory. What the plaintiff asks for, and what he has bargained and paid for, is that the ship shall be finished and made ready for sea with all convenient speed, and he placed in the command. He has performed, or tendered the performance of, all his part of the contract in its precise terms, and he claims a like performance on the part of the defendants. When the contract is carried into execution they may exercise all the rights the law allows them. Whether they, as major owners, can immediately remove him from the command will be the subject of after consideration. It is certain in ordinary cases the major owners have this right. They may displace a master without assigning any reason. But if the master is a part owner, a court of admiralty, by which this jurisdiction is exercised, according to Lord Stowell, requires some justifying cause to be shown by the major owners beyond their own pleasure before it will interfere to displace him. The New Draper, 4 C. Rob. Adm. 290. By the common law, as a tenant in common, he has equal right to the possession with any other owner, and the admiralty pays so much respect to his common-law right that it will not interfere to disturb his possession without some cause shown, and would, I think, be reluctant to do it without a sufficient cause when the master was in possession under such a contract as this. On the whole, I shall grant both parts of the injunction asked for. And I do it with less reluctance as the injunction is only until the further order of the court. If I am wrong, no irreparable injury will be done to the defendants, as they may at any time apply to the circuit judge to have the injunction removed.

This case did not proceed to a final hearing, it having been adjusted by the parties.

HIGGINS (SMITH v.). See Cases Nos. 13,-057–13,060.

HIGGINS (SPARKMAN v.). See Cases Nos. 13,208 and 13,209.